ADAM v. MANUFACTURERS' & TRADERS' NAT. BANK OF BUFFALO.

(Erie County Court. May 3, 1909.)

BANKS AND BANKING (§ 149*)—CERTIFICATION OF CHECKS—LIABILITY OF
CERTIFYING BANK.

G. opened a bank account with plaintiff under the name of C., and in making deposits used for indorsing a rubber stamp. Thereafter he presented to defendant bank a check payable to C.; the name of the maker being forged by G. Defendant certified it by stamping on it, "Good when properly indorsed," and the check was presented to plaintiff, indorsed by C. with the usual stamp, and the amount of the check credited to C. by plaintiff. Subsequently defendant refused payment on the ground that the check was not properly indorsed; but before that plaintiff had paid the amount of the deposit on a check signed by C. *Held*, that defendant was liable to plaintiff as having certified a forged signature to a check which plaintiff in good faith had paid; the negotiable instruments law having rendered the certification an acceptance of the check by defendant and engagement that it was signed with the signature of an existing maker, who had authority to make the check, and that the payee existed and had capacity to indorse.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 149.*]

Action by Robert B. Adam against the Manufacturers' & Traders' National Bank of Buffalo, N. Y. Judgment for plaintiff.

Lewis & Carroll, for plaintiff.
Rogers, Locke & Babcock, for defendant.

TAYLOR, J. In May, 1908, a man named Gaughan was employed by the Lepper & Tisdall Company in the city of Buffalo as a bookkeeper. His employer knew him by the name of Scanlon. During this month he opened a banking account with the plaintiff, who, incidental to his main business, that of running a large department store, runs a banking concern. Gaughan did this banking business with the plaintiff under the name "Michael J. Cawley," and the plaintiff knew him by no other name until his arrest for the forgery spoken of later. Gaughan made a number of deposits in this account, aggregating close to $1,500 in all, and drew many checks against it. In making deposits he frequently used for indorsing a rubber stamp similar to the one referred to hereinafter. On August 8, 1908, Gaughan (Scanlon, Cawley) presented to the defendant bank a check drawn to the order of Michael J. Cawley and signed, "Lepper & Tisdall Co., by P. J. Tisdall, Secty." The signature to this check was forged by Gaughan, who is now serving a prison term therefor. The defendant certified the check by causing to be stamped upon its face: "Good when properly indorsed. Manufacturers' & Traders' Bank of Buffalo, W. Aspinwall, Assistant Cashier." On the 10th of August this check was by some person presented at the plaintiff's banking department with these words upon the back thereof printed with a rubber stamp: "Pay to the order of Adam, Meldrum & Anderson Co. Michael J. Cawley." The Cawley account was credited by plaintiff with the $1,000, and the check sent through the Clearing House via the Third National Bank of Buffalo. When the check appeared at de-

fendant's bank from the Clearing House, payment was refused on the ground that the check was not properly indorsed. On August 11th a check was presented to the plaintiff by some person, drawn to the order of "Cash," and signed "Michael J. Cawley"; the handwriting of the signature being the same as that of plaintiff's depositor, Michael J. Cawley. This check was paid by plaintiff before plaintiff ascertained that the defendant had refused payment of the $1,000 check. The condition of the Cawley account was such that by this transaction the plaintiff lost $895.21. The plaintiff brings suit against the defendant to recover the last-mentioned sum, with interest. The parties have stipulated to try the case before this court without a jury.

Under our negotiable instruments law this certification placed by defendant upon this $1,000 check meant an acceptance of the check by the defendant according to its tenor; that is, a formal engagement that the check was signed with the genuine signature of an existing maker, that he had capacity and authority to make the check, that the payee named therein existed and at that time had capacity to indorse, and that the defendant would pay the check if duly presented and "properly indorsed." The defendant admits that it has certified as genuine a maker's name which was forged, and that to that extent it is bound; but its claim is that it is not bound to answer to plaintiff for the amount of his loss through the forged check, for the reason that there is no "proper indorsement" and that the plaintiff is not a holder for value in good faith. I think no one disputes it to be settled law in this state that a person may be bound as an indorser of commercial paper by any name, mark, or designation which he uses intending to be bound thereby. The defendant may say here:

"But it does not appear that Cawley (Gaughan) himself placed or authorized the placing of the rubber stamp indorsement on the back of the check."

The answer to this is that neither Cawley nor this defendant can take advantage of any such claim, for the reason that it is immaterial who placed this indorsement on the check, since the check, certified and thus indorsed, was placed by the plaintiff to the credit of Cawley, the very man named therein as payee. It is further immaterial, for the reasons stated, whether the payee was thus named correctly or incorrectly. It is true the burden is on the plaintiff to show that he was careful and acting in good faith in this transaction. I can find nothing which shows that the plaintiff was so situated that he was required to do more than he did, either in giving the Cawley account credit for the $1,000 check or in cashing the $900 check. The $1,000 check was deposited with the plaintiff, after certification, to the credit of the same man known to the plaintiff as Cawley, who was named as payee in this check, and by whose properly signed check the $900 was paid out.

As to plaintiff's position respecting the indorsement there is no question but that, if the $1,000 check had borne the indorsement "Michael J. Cawley" in the handwriting of Gaughan, who owned the Cawley account at plaintiff's store, and, thus indorsed, had been presented by Gaughan for payment to the defendant after certification by it, the defendant would have been bound to pay. Is the situation altered in

law to the advantage of the defendant when said check, certified and bearing the rubber ·stamp indorsement mentioned, is presented to defendant for payment by the plaintiff, who has credited the payee's account with the sum named in the check, and who further has cashed a $900 check bearing the genuine Cawley signature as maker on the faith of the $1,000 check, the $900 check having been signed by the identical person designated as payee in the $1,000 check by the name of Cawley? I think not; and this, whatever the real name of the man signing himself Cawley. If Gaughan had engineered and completed this whole series of·transactions in his own name, the situation would have been the same; it not appearing that there was any real "Michael J. Cawley," who was impersonated or whose name was used or forged.

It is true that Gaughan committed the crime of forgery, both when he signed the name of the maker to the $1,000 check without authority and when he uttered the instrument thus forged with criminal intent. However, there was no forged indorsement, because of the facts which I have recited with reference to the identity of the payee named in the $1,000 check and the man who owned the account with plaintiff to whose credit the check was placed. Neither can it be claimed, so far as the case at bar is concerned, that Gaughan committed any crime when he opened the account with plaintiff as "Cawley," or when he transacted business pertaining thereto as ·"Cawley," so long as he merely assumed that name to designate himself, and not with criminal intent for the purpose of representing himself to be a "Michael J.. Cawley," who really existed. The only conclusion I can reach from the facts presented is that the defendant has certified as good a forged signature to a check which the plaintiff, in good faith, in the ordinary course of business, and with the ,exercise of due caution, has paid. Therefore, under our statute, the defendant is liable.

Judgment may be entered for the plaintiff in the sum of $895.21, with interest thereon from August 12, 1908, and the costs of this action.